## KEEN & WOOLF OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19363. Promulgated February 21, 1929.

*R. A. Littleton, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

**544**

OPINION.

PHILLIPS: The single question in dispute in this proceeding is whether the leases acquired by the petitioner on May 22, 1919, from Keen and Woolf may be included in invested capital at their fair market value on that date (sec. 326(a) (2), Revenue Act of 1918) or whether the transaction falls within the provisions of section 331 of the Revenue Act of 1918, which provides that in the case of the change of ownership of a trade or business or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons or any of them, then such asset transferred or received from the previous owner shall, for the purposes of determining invested capital, be taken at the cost of acquisition to the previous owner. In the present case the property in question was transferred by the previous owners to the corporation in exchange for all of its common stock and 1,100 shares of its preferred stock. It seems obvious that this situation comes within section 331 unless the agreements made by the petitioner and by the individuals, Keen and Woolf, with Jester, on the same day, take the transaction out of that section.

The substance of petitioner's contention is stated in its brief as follows:

Under the plan outlined in said contract of May 22, Keen and Woolf were at no time the beneficial owners of more than 16,500 shares of the common stock and 1,100 shares of the preferred stock, which was approximately 27% of the whole of the common and preferred stock authorized to be issued.

This assumes to take the transaction out of section 331 on the grounds:

(1) That the authorized capital stock is to be considered rather than the issued capital stock.

(2) That the contracts vested beneficial ownership elsewhere than in the individuals to whom all the outstanding stock was issued.

(3) That the "interest or control" of the former owners did not exceed 27 per cent.

No one of these seems to us correct.

All of the issued stock was owned by Keen and Woolf. If, as the petitioner suggests, they held a part of it in trust, it would not affect the situation. If they were trustees for the petitioner, they still remained the sole owners of the only stock outstanding which was not owned by the petitioner. Certainly they did not hold it as trustee for Jester, whose rights were merely contractual. But if by any stretch of the imagination it could be said they were trustees for Jester, they still owned more than 50 per cent of the common stock and all the issued preferred stock. Only by treating the unissued preferred stock, which Jester had agreed to attempt to sell, as owned or controlled by persons other than the petitioner or Keen and Woolf, could it be said that these individuals did not have a 50 per cent interest in these leases. Section 331 has reference to the interest or control which exists at the time the stock is issued for property; not to the situation which may exist at some future time if the new company is successful in selling more of its stock. We must look to the situation on May 22, 1919; not to that which existed on December 3, 1919. At that time we find the entire ownership and control in Keen and Woolf.

But even on December 3, 1919, after the contract with Jester had been fully completed, Keen and Woolf remained *in control* of more than 50 per cent of the property transferred to them. They owned more than 50 per cent of the common stock, the only stock having voting rights at that date. In speaking of the control which an individual may have in property which he has transferred to a corporation, Congress must have had in mind control of the property through control of the corporation. Such control is exercised by stockholders by means of their votes; this is the control which is legally recognized. Remaining in control of more than 50 per cent of the voting stock, Keen and Woolf controlled this property within

the meaning of section 331 even after the agreements with Jester had been carried out.

*Decision will be entered for respondent.*